# Chattanooga Southern Railroad Co. v. Wilson.

## Action for Negligently Killing Cow.

1. *Negligence; what facts constitute in railroad company.*—Where it is shown in an action for damages for negligent killing brought against a railroad company that the cow killed was in open view to the engineer of the train, far enough away for him to stop his engine before reaching her, and was feeding towards the track within ten feet of it, was near the mouth of a cut in the roadway with a fence in her rear and an embankment in front; these facts taken with the nature, instincts and habits of the cow indicate a condition of so great peril as to require the observance of necessary precautions to avoid killing or injuring her; and if under these circumstances the engineer of the train failed to keep a proper lookout so as to have seen the cow before she got on the track in time to check or stop the train and thereby save the life of the cow, and she did get on the track and was killed, then the defendant is liable for the value of the cow.

APPEAL from Gadsden City Court.

Tried before Hon. JOHN H. DISQUE.

Wilson sued the Railroad Company for damages resulting from the killing of a cow by the train of the defendant. The facts are stated in the opinion. The two charges given to plaintiff were: 1. "The court charges the jury that if they believe from the evidence that the engineer in charge of the train which killed the cow sued for, could by keeping a proper lookout have seen the cow before she got on the track in time to check or stop the train and thereby save the life of the cow, and he failed to keep such proper lookout, then the defendant is liable for the value of the cow."

2. "The court charges the jury that if they believe from the evidence that the cow sued for was killed on account of negligence on the part of the engineer then they must find for the plaintiff."

Judgment for plaintiff.

BURNETT & CULLI, for appellant, contended that the duty of the engineer with reference to the cow. did not arise until she moved towards the track; and that when she did so start it was too late, citing, *Choate v. So. Ry. Co.,* 24 So. Rep. 373; *Ala. G. S. R. R. Co. v. McAlpine,* 75 Ala. 113; *Railroad Co. v. Jones,* 56 Ala. 507; *Railroad Co. v. Bayliss,* 77 Ala. 429; *Railroad Co. v. Watson,* 91 Ala. 483.

AIKEN & MARTIN, *contra,* contended, that the duty to take precaution arises not only when the engineer sees an animal on the track ,but when it is in dangerous proximity thereto, and also when by due diligence he might have seen it, citing the above authorities on appellant's brief, and *L. & N. R. R. Co. v. Posey,* 96 Ala. 262; *Western Ry. Co. v. Sistrunk,* 85 Ala. 357.

HARALSON, J.—The witness, Wyatt, for plaintiff, testified that he saw the cow when she was killed, and it was in a cut where she was struck by the engine; that there was a fence running parallel with the track, on its left side going north, which fence was about 20 feet from the track, and there was a public road between the fence and the track; that from where the cow was knocked off, to the fence, it was about 35 feet; that the fence ran straight and the track curved towards the right; that the cow had her head turned towards the track and was feeding in that direction; that there was an embankment at that point on the right side of the track; that there was nothing to obstruct the view, and the engineer could have seen the animal for a quarter of a mile; that the engine was 60 or 70 feet from the cow, when she started towards and jumped on the track, and ran north, 60 or 70 feet, before she was knocked off; that the cut in which the cow was killed is just beyond where she got on the track, and it was near middle of the afternoon. He also testified, that he was, at the time, 150 or 155 yards away to the left, and that there was no alarm sounded, no whistle blown or bell rung until the cow was knocked off.

The witness, Wilson, for plaintiff, testified to facts corroborative of the evidence of the witness, Wyatt, as to the location and surroundings at the scene of the accident.

[Chattanooga Southern Railroad Co. v. Wilson.]

The engineer, Westcott, testified that when he first saw the animal, she was within 10 feet of the track, walking towards it very fast; that he was within 90 feet of her, when she started to cross the track, and he was running thirty miles an hour; that the train was well equipped with best appliances for stopping it; that as soon as he saw the cow start towards the track, he reversed his engine, applied the air brakes in the emergency feature, and blew the cattle alarm whistle, and stopped as soon as it could be done—some 50 to 100 feet beyond where the cow was killed; that he could not stop in less than 200 feet, while running 30 miles an hour, and was keeping a lookout all the time. He afterwards stated, that it was all done so quick, that he supposed he did not get to the whistle till the accident happened.

In the case of *Choate v. So. Railway Co.*, 24 So. Rep. 373, relied on by defendant, the evidence showed, that when the cow was first seen, she was not on the right of way of defendant company, but was standing in the corner of a fence, about 20 feet from defendant's roadway, and was not discovered by the engineer, by reason of the fact of being concealed behind said fence. It was held in that case, that the engineer's failure to keep a proper lookout, as assumed in some of the instructions, but of which there was no evidence, bore no causal relation to the injury, if such lookout would not, because of the cow's position in the fence corner, have sooner disclosed her presence. It was also said, that "the duty of action on the part of the trainmen with reference to the cow did not arise while she was standing at the fence,—they had the right to assume that she would remain there—but only when she moved towards the track; and it cannot be said to have been the duty of the engineer to discover the animal at all, or take any account of her while she was standing motionless off the right of way, and surely she could not be considered an obstruction on the track while in this position and attitude."

Again it was but recently held (*Chattanooga Southern R. R. Co. v. Daniel*, 25 So. Rep. 197), that independent of the statute on the subject, it is among the common law duties of an engineer to ring the bell or blow the whistle to frighten away stock, when seen, or by due dili-

[Chattanooga Southern Railroad Co. v. Wilson.]

gence could have been seen in close proximity to the track, under circumstances indicating a purpose or disposition of going upon the track; and if necessary to prevent injury to the stock, the further duty of checking the speed or stopping the train. It was added: "In all these cases [referring to those cited to sustain the foregoing principle], it must be observed that the mere fact of close proximity alone of the animal is not sufficient to exact a performance of these duties by the railroad company or its agents, but such close proximity must be attended with circumstances or conditions indicating danger." It is manifest from these references to these cases, that the principles announced do not, and were not intended to apply, in a case where an animal is in open view to the engineer, far enough away for him to stop his engine before reaching it, and in such close proximity to the track, as when taken together with her surroundings, would indicate peril. In such an instance, the duty to discover the animal and stop the train in time to keep from killing it, if it should go upon the track, would arise.

In the case in hand, we have seen from the recited facts, that the cow could have been easily seen in time to stop the engine before reaching her; she was feeding towards the track, within ten feet of it; was near the mouth of a cut in the roadway, with a fence in her rear, and an embankment in front, all indicating, when one remembers the nature, habits and instincts of the cow, a condition of so great peril as to require the observance of necessary precautions to avoid killing or injuring her, if she should go upon the track.—*Central of Georgia R. R. Co. v. Turner*, in MS.

When applied to the evidence, we discover no reversible error in the two charges given at the instance of the plaintiff.

Some of the charges given at defendant's instance were more favorable to it than could have been demanded. Others were substantial duplicates of some of those which were refused, justifying their refusal. In none of the refused charges, having reference to the facts, may reversible error be found.

Affirmed.